FEDERAL TRUST COMPANY, Trustee, Appellee, v. CARL D. NELSON et al., Appellants.

No. 41782.

APRIL 2, 1935.

OPINION ON REHEARING APRIL 7, 1936.

Welch & Mueller, William P. Welch, and Welch & Virtue, for appellants.

Ginsburg & Ginsburg, and Robertson & Wolfe, for appellee.

RICHARDS, J.—A petition for rehearing having been granted, the former opinion filed April 2, 1935, 260 N. W. 341, is withdrawn, and this opinion is substituted therefor as the opinion of the court in this matter.

This was an action at law and was tried to the court. Defendants had executed to plaintiff fourteen promissory notes, and a mortgage upon certain Nebraska real estate securing the notes. The Nebraska real estate had been exhausted by foreclosure of the mortgage, leaving a portion of the notes unpaid, to recover which this action was commenced. The notes and mortgage were Nebraska contracts and the substantive rights of the parties are to be determined by the laws of that state. The notes became due November 1, 1927, prior to which date defendants had conveyed the mortgaged real estate to a third person, who, as part of the consideration, had assumed and agreed to pay the mortgage indebtedness. On November 10, 1927, plaintiff-mortgagee entered into a written contract with the said grantee of the mortgaged premises, extending for a term of years the time for payment of said notes, without the consent or knowledge of the defendants. Defendants pleaded in defense to said notes that, under the laws of Nebraska, the execution of said extension agreement released defendants from personal liability on the notes, and they also pleaded that said notes were usurious. The district court held the defendants had not been released, that the notes were not usurious, and entered judgment against defendants for full amount of the notes including interest, from which judgment this appeal was taken.

The errors relied on by appellants are, first, that the court erred in entering judgment against them, because, as appellants claim, they were released from personal liability, by reason of

the execution of the extension agreement, and, second, the court erred in including in the judgment any interest on the notes, appellants claiming that the notes were usurious, and that under the laws of Nebraska interest is not collectible upon a usurious contract.

Anent the alleged error first mentioned, the Supreme Court of Nebraska at one time had determined in Merriam v. Miles, 54 Neb. 566, 74 N. W. 861, 69 Am. St. Rep. 731, that in a fact situation identical with that involved in the execution of the extension agreement of November 10, 1927, the makers of the secured notes became released from personal liability. The reasoning of the case was that the grantee assuming the mortgage debt had become the principal and the mortgagors had become his sureties, and the extension, without consent of the surety-mortgagors, operated to release them. But later, in the case of Peter v. Finzer, 116 Neb. 380, 217 N. W. 612, 65 A. L. R. 1419, that court held that this pronouncement in the Merriam case did not have application to negotiable instruments, because under the provisions of the Negotiable Instruments Act of Nebraska, the maker of a note is primarily liable for its payment, and the court held that the expediency of obtaining uniformity in the law merchant was a sufficient reason for such holding in the Peter case. However, from the testimony of witnesses learned in the law of Nebraska, it appears that the rule in the Merriam case still obtains so far as nonnegotiable instruments are concerned. So, to avail themselves of the holding in the Merriam case, appellants at all events must establish that these notes were nonnegotiable.

■■■ Appellants say the notes were nonnegotiable at the time of the extension agreement because, first, they were past due, and, second, they were usurious. It is apparent that the fact that the notes were past due when the extension agreement was made avails nothing to appellants, because if the notes were negotiable instruments, this characteristic continued after their maturity, although subject to certain defenses that were not admissible against a bona fide purchaser before maturity. The makers would continue to be the principal debtors, after maturity, and, not being sureties, they could not invoke the rule for their discharge as sureties, as found in the Merriam case.

■■■ As to the proposition that the notes were nonnegotiable

because they were usurious, the evidence establishes that the maximum legal interest rate in Nebraska, during all the time we are considering, was 10 per cent per annum, and that any interest in excess was usurious. The notes in suit provided for interest at 6½ per cent per annum, but contained the additional agreement that if default be made in payment of interest or principal when due, then interest at 10 per cent shall be allowed on any such defaulted amounts until the same are fully paid. The notes in suit provide that the mortgage and notes are a part of the same contract and are to be considered together. The mortgage contained an agreement that the mortgagor, in addition to the interest on the notes, will pay all taxes that may be levied on the mortgage and the debt secured thereby. It is defendants' contention that the agreement to pay these taxes in addition to the interest amounted to a usurious contract. The same question arose in Carley v. Morgan, 123 Neb. 498, 243 N. W. 631, with reference to a mortgage and notes providing for interest at 8 per cent and an agreement that the mortgagor would pay all taxes that might be levied upon the mortgage and the secured indebtedness. In substance, the holding in that case is that, to make a contract usurious, there must be an intent on the part of the borrower to give, and the lender to receive, interest in excess of the legal limit; and that because the amount of the taxes agreed to be paid by the mortgagor is a matter for future determination by the taxing authorities, over which the parties had neither supervision, knowledge, nor control, it cannot be presumed, when the agreed interest rate is materially less than the maximum legal rate, that there was an intent that the borrower was to give and the lender receive interest in excess of the legal limit. Also in Western Securities Co. v. Naughton, 124 Neb. 702, 248 N. W. 56, 58, there was the defense of usury in an action to foreclose two real estate mortgages. The agreed interest rate was 6 per cent per annum until maturity and, in addition, the mortgagors agreed to pay the taxes on the interest of the mortgagee in the real estate. The agreed interest after maturity was 10 per cent. The opinion states:

"The contract for the maximum legal rate of interest after maturity was a separate contract, was lawful, and did not constitute usury. * * * There is no attempt to collect for taxes in

this case after maturity, since neither party has paid any taxes * * * except from the rents, which were assigned at the time of the execution of the notes and mortgages. The provision for the payment by the mortgagor of taxes, the amount of which is uncertain and unknown, does not make the transaction usurious, because at the time it could not have been within the contemplation of the parties so that the agreement could have been for a usurious rate of interest. * * * It follows that provision in the contract for payment of taxes by mortgagor, in addition to the maximum legal rate upon default, and after maturity, is not an agreement to pay usurious interest.''

In the case at bar, the instrument sued on is the only evidence in the record pertaining to the question of usury. We think the Nebraska cases above cited determine the issue adversely to appellants and lead to the conclusion that appellants have not carried the burden of proof of the affirmative defense that the contract embodied in the notes and mortgage was usurious. It follows that usury did not render the notes in question nonnegotiable, and it also follows that the defense of usury has not been established.

The case is affirmed.—Affirmed.

DONEGAN, C. J., and all Justices concur.